OPINION
By HORNBECK, J.
This is an appeal on questions' of law from a judgment in favor of the plaintiffs and against the-defendants for the sum of $950.00, with interest on $700.00, as prayed in the amended petition.
The plaintiffs’ first cause of action is against the defendant, Enyeart, only, and alleges that he-’, fraudulently converted the sum of* $700.00 to his own use, which sum the plaintiffs had paid to him in installments for the payment of a lot which said defendant, as realtor, was to purchase for them as their agent. The second cause of action is against the defendants and predicated upon a bond upon which defendant, Enyeart, was' principal, and the United States Fidelity and Guaranty Company is surety in the sum of $1000.00, which bond indemnifies any person who may be damaged by the failure of the defendant, Enyeart,. to conduct his business in conformity with the laws of Ohio governing real estate brokers. It is alleged that the bond has been breached by the defendant, Enyeart, in the particulars set out in the first cause of action. Other essential averments are made against, the Bonding Company.
The defendants, answering separately, generally deny the averments of the amended petition. Defendant Bonding Company admits the execution of the bond as alleged in the first paragraph of the second cause of action. Both defendants deny that any money was ever paid by the plaintiffs to-purchase a lot or that defendant, Enyeart, had agreed to purchase a. lot for the plaintiffs. Defendant, Enyeart, for a second defense alleges that in the transactions in which the plaintiffs paid to de *471 fendant Enyeart the sum of $700.00, he was acting as a duly authorized agent for Phillip W. Hamer with whom the plaintiffs contracted in writing for the erection of a residence and dwelling house on the lot referred to in the amended petition, which lot was owned by Evelyn DeWeese; that the money was paid to said defendant for Hamer as a part pay- . ment of a total contract for the purchase of the lot and the erection of the house for plaintiffs at a cost of $6100.00; that plaintiffs were informed by defendant, Enyert, of his relation to Hamer and the payments were made to defendant, Enyeart, with full knowledge and appreciation of said relationship; that he paid said sum to Hámer and that he neglected, failed and refused to repay, such sum to the plaintiffs or to complete his contract. Said defendant denies any agency on his part on behalf of the plaintiffs. The Bonding Company denies that the activities of defendant, Enyeart, were such as are contemplated in §§637-35 to 637-51 GC, inclusive, and pleads on the question of agency as does the defendant, En.■yeart.
Plaintiffs, replying to the answers, generally deny every allegation therein contained not theretofore admitted to be true.
On issues drawn, the cause was submitted to a. trial judge, jury waived, and at the conclusion of the trial, defendants requested special findings of law and fact which were returned and upon which the trial judge made findings in favor of the plaintiffs and against both defendants and after motion for new trial was overruled, entered judgment in accordance with said findings as heretofore stated.
Numerous errors are assigned, considered and briefed extensively by the parties. Seven separate errors are assigned on behalf of each of the appellants.
We will not discuss the errors assigned separately but pass upon them under general discussion of the determinative questions presented.
It is urged that the finding and, therefore, the judgment is not sustained by and is manifestly against the weight of the evidence and contrary to law. This requires consideration in the first instance of the correctness of the separate findings of fact and law. It is urged with much force in appellant’s brief that several propositions of the findings of fact are without any support in the record.
Briefly, it is the theory of the plaintiffs that they entered into negotiation with defendant Enyeart after having answered an advertisement in a Dayton Newspaper “Houses for sale — New bungalows — 10%—call for detail. TA-3920”; that pursuant to a telephone call from them to Enyeart, he came to their home. Later brought plans of the houses which he proposed to erect at prices quoted to them; that inasmuch as they owned no lot, it was necessary in the first instance that a lot' be procured: that pursuant to this common understanding, they, with defendant Enyeart, went to several allotments and looked at a number of lots, finally selecting a lot owned by Evelyn DeWeese on DeWeese Parkway. It was generally accepted that this lot would cost $450.00. It v/as the claim of the plaintiffs that at the time that they talked to defendant about the purchase of the house and lot, the lot was at all times estimated at approximately 10% of the total cost; that in the early' conversations they spoke of the lot costing around $500.00, based upon a total cost of $5000.00 for house and lot, but that because of certain improvements which: *472 they desired, Enyeart said to them that the completed house would require a cost of about $600.00 for the lot. There was some misunderstanding about the lot which was agreed upon because the house, as proposed, could not be made to face upon the street desired and to overcome this difficulty, it was proposed that further purchase be made. It was the claim of the plaintiffs that they paid, in all, $700.00, which was to be applied to the purchase of a lot. The record does not support this conclusion, the total sum to be allocated for a lot being $600.00.
The defendants claim that Enyeart, at no time, was acting for the plaintiffs and informed them early in their conversations that he was representing Hamer, who was a contractor and who was to erect the house and purchase the lot and plaintiffs were to deal with him. The record discloses that Enyeart did bring a written contract to the plaintiffs wherein they contracted with Hamer to pay the total sum of $6100.00 for the building of the residence. This contract is incomplete in any relation' to a lot and it is doubtful, although the question has not been raised, if Hamer at any time, if bound under this contract, was obligated to do more than build a residence on a lot. It is the claim of the defendants that at all times the plaintiffs were informed by Enyeart that they were dealing with Hamer. The record is uncertain whether or not Hamer’s name was on the contract when it was presented to the plaintiffs for their signature and it is well within probability that he did not sign it until after the plaintiffs had signed. The court found that they signed it in blank, probably meaning that when they signed it, Hamer’s name was not on it. Hamer contracted with DeWeese for the lots. However, after the plaintiffs had waited months for the completion of their contract with Enyeart, as they understood it, a deed was prepared in the office of the agent of DeWeese for a lot made directly to the plaintiffs, but, inasmuch as all the money that they had paid to Enyeart had been by him turned over to Hamer, they could not conform to the requirements of the owners of the lot as to payment therefor and then called upon Enyeart to repay them the sum which they had advanced to him. An effort was made to secure this money from Hamer without success. Thereupon Enyeart elected to stand upon his rights as set forth in his answer.
The findings of fact of the trial judge are extended but basically it was there found that in the payment of the money to Enyeart, he stood in the relation of agent to the plaintiffs and was obligated as a fiduciary to protect this sum as against the purchase of the lot which the plaintiffs had been assured they would have deeded to them; that the payment of the money to Hamer was made in violation of Enyeart’s obligation as plaintiffs’ agent, a licensed real estate broker. The court found that Enyeart, “was extremely careless and violated the confidence the Guies placed in him as a licensed real estate broker”. The court specifically found
“that defendant, Enyeart, contacted plaintiffs through an ad to purchase the real estate, evidently meaning 10% down, and that he contacted them as a licensed real estate broker. The court further finds that he attempted to sell them a lot .and led them to believe, at all times, that they were purchasing a lot for the sum of what developed to be $600.00 from the DeWeeses and had *473 a deed made from DeWeese direct to the Guies.”
The court specifically found the conditions of the bond to have been broken and that defendant, Enyeart, had violated the provisions of “An act regulating the business of real estate brokers, requiring a license and a bond from real estate brokers and providing a penalty”, and that the defendant guaranty company is liable for any violations of the law under the Real Estate Broker’s Act, as provided therein under §6373-35 GC.
We are of opinion that the court was well within the inferences properly to be drawn from the evidence in making all of the material findings of fact as returned by him. It is urged that upon several of the facts found by the court there is no direct evidence. This is true but from the facts specifically testified by the plaintiffs, other facts may be properly inferred. Plaintiffs, at all times, maintained that the defendant, Enyeart, had not told them that he represented Hamer in the transaction; that he did not inform them that they were to look to Hamer to secure their lot and it may be inferred that they, at all times, entrusbed the purchase of the lot to Enyeart as their agent and paid the money with him to be expended for them. This is in accord with the gist of the findings of fact of the trial judge. The court in the finding and judgment awarded $700.00 to the plaintiffs, with interest, representative of the sum which they had at certain times paid over to Enyeart., In addition thereto, he found that the plaintiffs had expended, 'or contracted to be expended, attorneys’ fees for prosecuting the suit to recover the damages assessed in the instant case, and that the reasonable value of such fees was $250.00, Which sum he awarded to the plaintiffs as damages against the defendants.
This action of the court is made the subject of the assignments of error, both as to the sum of $700.00, which it is insisted may not be supported under the evidence, and as to the award of attorneys’ fees, as damages contemplated as flowing from the misconduct of defendant, Enyeart, and as included within the terms of the bond as given or by the statutes under which the bond of Enyeart was given.
The plaintiffs may recover against both defendants in the sum of $600.00, the sum paid by them to defendant, Enyeart, because it is inferable from all the facts that he received this money as a broker for the purpose of assuring the payment of the purchase price of the lot upon which the residence was to be erected. It was at a LI times understood by the plaintiffs and Enyeart that he did not own the lot and that it would have to be acquired from DeWeese. The money to the amount of $600.00 then was placed with Enyeart for the express purpose of buying the lot for the plaintiffs. The additional sum of $100.00 paid to Enyeart, upon the claim of the plaintiffs themselves, was paid to him as the contractee to erect the building on the lot. ,
Although it is doubtful, upon strict interpretation of the pleadings, if the plaintiff was entitled to a judgment against Enyeart for more than $600.00, we would not disturb a judgment in that sum against him because it is clear that he had and received this money from the plaintiffs 'and was under obligation either to use it according to their contract with him or to return it to them. How *474 ever, the judgment in excess of $600.00 with interest can not be supported against the defendant Casualty Company because the money over and above $600.00 was not accepted by Enyeart as real estate broker or as agent of the plaintiffs. Ruby v Hardin, 33 Abs 544.
It will be observed that the amended petition of plaintiffs alleged that the defendant, Enyeart, fraudulently converted the money paid to him by the plaintiffs to his own use. But the trial judge did not so find, restricting his finding of fact to the effect that he was ‘•extremely careless and violated the confidence the Guies placed in ■him as a licensed real estate broker”. This finding of fact was sufficient to support a finding and judgment against both defendants with the exception of the amount allowed as attorneys’ fees.
It is basic that before a judgment could properly be entered against the defendant or his surety for attorneys fees, such fees must be classified as damages to which the plaintiffs were entitled under the law in the light of the facts found by the trial judge. We do not understand that the finding of the trial judge would support an award of punitive damages against the defendant, Enyeart, and unless and until such damages may be properly awarded, attorneys fees may not be allowed as compensatory damages. There is no proper basis in the findings of fact for an award of exemplary damages and none were considered or awarded. This was essential to an allowance of attorneys fees as damages. This principle of law is established in a line of cases, beginning with Roberts v Mason, 10 Oh St 277, which has. been, followed uniformly in the cases. 13 O. Jur. 186, 187, 189.
Hesson v Fidelity and Casualty Co., 25 Abs 208 is cited by appellees as supporting the award of attorneys’ fees. In this case,, Hesson, the plaintiff, had secured a judgment against Davidson, a broker, for damages for wantony wilful and malicious conversion of property of Hesson. The courts awarded punitive damages amd allowed attorneys’ fees. Thereafter, Hesson instituted a separate suit against the Fidelity and Casualty Company as surety for Davidson, broker, and as a part of his damages, claimed $200.00 attorneys’ fees, which had theretofore been allowed Hesson in his suit against Davidson. The trial judge included this fee in the damages for which it was held the Casualty Company was liable upon its bond. Upon appeal it was the claim of the Casualty Company that the attorneys’ fees were not a proper measure of damages. The reviewing court supported the judgment, saying, however, that it was not determining whether or not the trial court in the first action erred in allowing the attorneys’ fees. The difference between the cited case and the instant case is apparent. There the court specifically found wanton, wilful and malicious conduct on the part of the realtor, awarded punitive damages and as an incident thereto and as compensatory damages also allowed attorneys’ fees.
We find no other claim of prejudicial error sustained. The judgment will be modified in accordance with our opinion and as modified, will be affirmed.
GEIGER, PJ., & BARNES, J., concur. • ' — •’