The State of Ohio, Appellee, *v.* Glass, Appellant.

[Cite as State v. Glass (1971), 27 Ohio App. 2d 214.]

(No. 295—Decided May 21, 1971.)

*Mr. Angus B. Wilson,* prosecuting attorney, for appellee.

*Messrs. Gold, Rotatori, Messerman & Hanna* and *Messrs. Wilson, Wilson & Wilson,* for appellant.

Gray, J. This cause is in this court on an appeal on questions of law from a judgment of the Court of Common Pleas of Brown County. Defendant was convicted by a three judge court of what is commonly known as "grave robbing," an offense denounced by R. C. 2923.07 and also of the offense denounced by R. C. 155.03 in that defendant without lawful authority did remove certain monuments, gravestones and grave markers from a cemetery.

Defendant, feeling aggrieved by this result of her trial, filed her notice of appeal and assigned the following errors:

"First Assignment of Error—The court erred in permitting the State to amend the indictment and the bill of particulars to allow the state to obtain a conviction on proof

that the offenses charged in the indictment had occurred two years before the dates set forth in the indictment and in the bill of particulars.

"Second Assignment of Error—A delay of over two years in the initiation of prosecution operated to deny appellant a fair trial and to deprive her of rights guaranteed by due process of law.

"Third Assignment of Error—The court erred in excluding testimony which tended to demonstrate that appellant had not acted willfully in committing the acts charged in the indictment—testimony which was relevant to the question of guilt or innocence.

"Fourth Assignment of Error—The court erred in admitting hearsay testimony, over the objection of counsel for appellant, to the prejudice of appellant.

"Fifth Assignment of Error—The court erred in denying appellant's motion for judgment of acquittal at the conclusion of the state's case where the state had failed to offer any probative evidence tending to establish that appellant had acted willfully and unlawfully as charged in the indictment.

"Sixth Assignment of Error—By repeatedly reciting facts outside of the record, facts designed to demonstrate the prosecutor's personal knowledge of relevant information, the prosecutor acted in a manner to deny appellant a fair trial.

"Seventh Assignment of Error—The court erred in predicating conviction solely upon a finding that appellant had transferred bodies from one grave to another without fully complying with all applicable statutes where the court admitted and the evidence demonstrated that appellant had not acted willfully in violation of the law."

Defendant is a real estate developer who had purchased a tract of approximately 60 acres of land in Huntington Township, Brown County. In developing the land, she ordered bulldozers to level land upon which a cemetery was located. The cemetery contained 21.6 poles of land and four graves. This land was excepted from the operation of her deed. There were three headstones and an

"ordinary big rock" that served as a headstone for one grave. It was determined that Alexander and Isabel Raines were buried there along with their cousin, Eleanor, who had an engraved headstone also.

It could not be determined which grave the "ordinary big rock" marked. Defendant secured a health permit to remove the bodies. She employed a licensed undertaker to move the bodies to another cemetery and also paid for moving the stones.

She attempted to secure approval of the Huntington Township Trustees, but the township records do not disclose any action of approval of the project. Several heated sessions and confrontations occurred which no doubt were the moving forces that caused the matters to be taken before the grand jury.

The first court of the indictment was based upon the language of R. C. 2923.07. The offense stated in that section is commonly known as "grave robbing."

A "grave robber" is defined in Webster's Third New International Dictionary as "one that breaks open a grave to obtain interred valuables or to remove the body (as for illicit dissection): a body snatcher: Ghoul."

The caption of R. C. 2923.07 (effective October 1, 1953) is *"Grave Robbing."*

Consideration of the title is especially proper where, as in Ohio, the title is prefixed by a solemn vote of the legislature passing the law, and there is a constitutional provision that no bill shall contain more than one subject, which shall be clearly expressed in the title.

The title of an act may be utilized for determining the purpose which induced the enactment of the law, which purpose may be considered in arriving at a correct interpretation of its terms.

In the interpretation of statutes, the titles thereof have been declared to be persuasive and entitled to great weight when one is determining their meaning.

Applying the law to the facts of this case. we are of the opinion that there is *no* evidence tending to prove the defendant is guilty of the offense of "grave robbing."

Ethel Raines Davis testified for the prosecution. Her testimony revealed that she was then 79 years old and that Alexander and Isabel Raines were her grandparents. These grandparents would have had to have been buried many years ago. Considering the state of the art of embalming at that time, the type of caskets and burial equipment then in use, and an elapse of time of approximately 125 years, the bodies would be entirely decomposed.

25A Corpus Juris Secundum 488, Section 1, states in part as follows:

"The term 'dead body' is synonymous with the word 'corpse,' and as used in a legal sense means the body of a human being deprived of life. When the word 'body' is used to denote human remains it suggests a corporeal or tangible entity, and thus the terms 'body' and 'dead body' do not include the remains of a human body which has long since decomposed. (Citing *Carter* v. *Zanesville*, 59 Ohio St. 170.)"

In 1880, when the statute in question (R. S. 7034, 77 Ohio Laws 85) was first enacted in present form, the caption of the section read: "Penalty for grave robbing."

When this statute became part of the General Code (Section 13391) the caption read "Grave Robbing."

Thus, we see that for over 90 years and after two major revisions of our code, the legislature acquiesced in the title and synopsis of the contents of this section. The meaning of the words "corpse" and "body" was interpreted by the Supreme Court in the case of *Carter* v. *Zanesville* (1898), 59 Ohio St. 170. It construed a related section of the code (R. S. 3764) which read in part as follows:

"Any person, association or company, having unlawful possession of the body of any deceased person shall be jointly and severally liable with any and all other persons, associations and companies, that had or have had unlawful possession of such corpse * * *."

The court at page 178 of the opinion said:

"This statute is directed against such persons, et cetera, as have unlawful possession of a 'body' of a deceased person. The section further refers to the 'body' as such

'corpse.' *The terms 'body' and 'corpse' found in this statute do not include the remains of persons long buried and decomposed.''*

Where a word or phrase has previously received a judicial construction in a related section of the code and there have been major revisions of the code by the General Assembly since that time, it will be presumed that the General Assembly had the intention to adopt the construction placed upon the word or phrase by the courts. *Cf. Goehring* v. *Dillard,* 145 Ohio St. 41.

As an aid in the construction of a statute, it is to be assumed or presumed that the legislature was acquainted with, and had in mind, the judicial construction of former statutes on the subject.

Accordingly, where words used in a statute have acquired a settled meaning through judicial interpretation and the same terms are used in a subsequent statute upon the same or an analogous subject, they are generally interpreted in the latter as in the former, where the object to which the words are applied, or the connection in which it stands, does not require it to be differently understood in the two statutes, or where a contrary intention of the legislature is not made clear by other qualifying or explanatory terms.

Since it may be presumed that the legislature knew the construction, long acquiesced in, which had been given by the courts to a statute reenacted by the legislature, it may equally be presumed that the legislature intended to adopt the construction as well as the language of the prior enactment. It is, accordingly, a settled rule of statutory construction that when a statute or a clause or provision thereof has been construed by a court of last resort, and the same is substantially reenacted, the legislature may be regarded as adopting such construction. This rule has been generally held to be persuasive and in some cases is even regarded as binding upon the courts.

The purpose of the General Assembly is a dominant factor in determining the meaning of any statutory legislation. There is no better key to a difficult problem of statu-

tory construction than the law from which the challenged statute emerged. Remedial laws are to be interpreted in the light of previous experience and prior enactment. *United States* v. *Congress of Industrial Organizations,* 335 U. S. 106, 112, 113, 68 S. Ct. 1349, 1352, 1353.

Reenactment of a statute creates a presumption of legislative adoption of previous judicial construction. A statute susceptible of either of two opposing interpretations must be read in the manner which effectuates, rather than frustrates, the major purpose of the legislative draftsman. *Shapiro* v. *United States,* 335 U. S. 1, 2, 68 S. Ct. 1375, 1376.

It is also a well established rule of statutory construction that all the provisions of a code bearing upon a single subject matter should be construed harmoniously.

The record shows that this plot of ground was grown up with brambles, briars, weeds and was abandoned for all intents and purposes.

The undertaker testified that he had to use probes to determine where the graves had originally been located. The relative softness of the ground revealed where the ground had once been disturbed.

We are of the view that these former places of excavation ceased to be graves when no "body" or "corpse" remained and that R. C. 2923.07 does not relate to the remains of persons *long buried or decomposed. Carter* v. *Zanesville, supra.*

We are also of the view that this section of the law applies only to "grave robbers," ghouls and the like, ones who have a nefarious purpose in disturbing the excavations.

It is interesting to note that neither the undertaker, the gravedigger who allegedly disinterred the bodies, nor the bulldozer operator who levelled the ground were charged with any offense. From the record, we learn that this defendant was ordered to Lima State Hospital for 60 days for a sanity examination upon the bald statement in a journal entry that:

"It appearing to the Court that the defendant here-

in was found guilty of the offense of opening a grave under such Section 2923.07 of the Revised Code of Ohio;

"And, it further appearing to the Court that the said defendant may be mentally ill, a mentally deficient offender, or a psychopathic offender * * *."

The record does not show that there was any medical evidence adduced that would warrant such action on the part of the trial court. After her examination at Lima for 60 days, she was found to be sane.

She did everything required by the law, but failed in the end to get the necessary permit.

These mortal remains must have been buried for at least 125 years and under the definition given in *Carter* v. *Zanesville, supra,* they were no longer "bodies" or "corpse[s]." A grave has been defined as an excavation in the earth in which a dead body is or is buried.

Since there was no corpse in this excavation, there was no grave in the sense intended by the various General Assemblies in motivating them to enact R. C. 2923.07 and previous related sections.

The offense denounced by this section is classed as a felony and hence serious consequences flow from a conviction thereunder. There is no evidence that anything of value was found in this plot of land.

A cadaver is not an everlasting thing. After undergoing an undefined degree of decomposition, it ceases to be a dead body in the eyes of the law. Disinterment of anything remotely identifiable as a human corpse, though carried out with no good intent, could not amount to "grave robbing."

In a famous English ecclesiatical case, *Gilbert* v. *Buzzard* (1820), S. C. 3 Phill. 335, 161 Eng. Rep.—Full Reprint 761, in an opinion written by Sir William Scott (later Lord Stowell), the court held that the right of burial extends in time no farther than the period needed for complete dissolution.

The prosecution failed to convict defendant by the requisite degree of proof and she is therefore discharged on the first count.

R. C. 155.03 in pertinent part states as follows:

"No person shall, without lawful authority, remove * * * a gravestone or gravemarker, as erected to perpetuate the memory or [*sic*] * * * other person * * *."

Under the facts of this case as developed in the record, defendant did not have any lawful authority to remove the gravestone, therefore, she is guilty of the offense charged in the second count of the indictment.

*Judgment accordingly.*

ABELE, P. J., concurs.

STEPHENSON, J., dissenting. The indictment upon which the defendant was prosecuted provided in its material part that:

"* * * one B. F. Glass, did unlawfully and wilfully open a grave where a corpse had been deposited, contrary to Section 2923.07 of the Revised Code of Ohio."

R. C. 2923.07 is captioned "grave robbing" and reads as follows:

"*No person shall willfully and unlawfully open a grave or tomb where a corpse has been deposited, or remove a corpse from its sepulchre, or knowingly deliver a corpse so removed to another for medical or surgical study, or receive, conceal, or secrete a corpse, knowing it to have been so removed or delivered.*

"Whoever violates this section shall be imprisoned not less than one nor more than five years." (Emphasis added.)

The above section had its inception in 44 Ohio Laws 77, 1846, wherein an act was published which stated the purpose in the title—"To secure the inviolability of places of human sepulchre." Section 1 of the act provided:

"That if any person shall open the grave of any deceased person, or the tomb where the body of any deceased person has been deposited, or shall remove the body or remains of any deceased person from its grave or other place of sepulchre, for the purpose of dissection or any surgical or anatomical experiments, or for any other pur-

pose, without the consent of the near relatives of the deceased, if there are any, otherwise without the consent of the trustees of the township in which such body has been deposited, or, if within any incorporated city, town or borough, without the consent of the municipal authorities thereof, or shall, in any way, aid, assist or procure the same to be done, or shall receive, conceal or secrete any such body, or shall aid or assist in any surgical or anatomical experiments or demonstrations therewith, or dissection thereof, knowing said body to have been so taken or removed from the place of its sepulchre, every such person, upon conviction thereof, shall be fined in any sum not exceeding one thousand dollars, or imprisoned not more than six months, or both, at the discretion of the court."

The section was embodied in the Revised Statutes of 1880 as Section 7034. In 77 Ohio Laws 85, the section was amended to read:

"Whoever, without lawful authority, willfully opens the grave or tomb where any corpse has been deposited, or removes any corpse from its place of sepulchre, or knowingly delivers any corpse so unlawfully removed to another for medical or surgical study, and whoever receives, conceals, or secretes any corpse so removed or delivered, knowing it to have been so removed or delivered, shall, upon conviction thereof, be imprisoned in the penitentiary not more than five years nor less than one year; and whoever assists in any surgical or anatomical experiment or demonstration upon any corpse unlawfully obtained, knowing it to have been so unlawfully obtained, shall be fined not more than one thousand dollars nor less than one hundred dollars, or imprisoned not more than one year nor less than six months or both."

In 1883, in *Schneider* v. *State*, 40 Ohio St. 336, the Ohio Supreme Court stated, with respect to R. S. 7034, concerning an alleged offense which occurred in 1879:

"The statute, section 7034 Rev. Stats., under which the indictment is framed, defines several distinct offenses. It is directed against any person who without lawful authority opens a grave, or removes the corpse from its place of sepulchre, or delivers it to another for surgical study,

or who receives, conceals or secretes the same so removed, or assists in any surgical demonstration, knowing it to have been so removed or delivered."

R. S. 7034 was enacted into the General Code as Section 13391. It was captioned "grave robbing" and provided:

"Whoever, wilfully and unlawfully opens a grave or tomb where a corpse has been deposited, or removes a corpse from its sepulchre, or knowingly delivers a corpse so unlawfully removed to a person for medical or surgical study, or receives, conceals or secretes a corpse, knowing it to have been so removed or delivered, shall be imprisoned in the penitentiary not less than one year nor more than five years."

Where I differ initially from my colleagues in this case is that I am not persuaded the offense charged in this case is that of "grave robbing." Admittedly, R. C. 2923.-07, under which the indictment is drawn bears that title. However, by the provisions of R. C. 1.01, the title, chapter and section headings do not constitute any part of the law as contained in the Revised Code. The decision of the Supreme Court in *Schneider* v. *State, supra,* in construing R. S. 7034, is clear authority that several offenses are embraced in R. C. 2923.07, one of which is the wilful and unlawful opening of a grave in which a corpse has been deposited. It is that latter offense, and solely that, laid in the indictment herein.

I find I must differ, also, from the majority opinion in the conclusions that the conduct proscribed; *i. e.,* the wilful and unlawful opening of a grave is lawful or unlawful depending upon the state of preservation of the corpse.

The legal distinction pointed out in the majority opinion between what is meant by "body" and that which remains after the body decomposes has long been recognized. By the same token, the legal distinction between the body of the deceased and the grave itself has also been recognized. In 21 A. L. R. 2d 476 at 477, the following is stated:

"In considering the law of dead bodies, two concepts

are to be borne in mind: (1) In legal contemplation a grave and the body interred within it are separate entities. (2) A cadaver is not an everlasting thing; after undergoing an undefined degree of decomposition it ceases to be a dead body in the eyes of the law.

"A grave is nothing more than a place where a body (or the ashes of a cremated body) is buried. It continues to be a grave as long as it is recognized or is recognizable as such. This may extend over centuries, long after the interred body and its trappings have merged with the soil and have become altogether undiscernible."

In carefully considering R. C. 2923.07 and the predecessor enactments, it would appear anomalous that the legislature intended a criminal sanction in unlawfully opening a grave where a body is preserved and intended no sanction if decomposition has occurred and only skeleton remanents remain. Particularly is this so in light of the original enactment that it is an offense "if any person shall open the grave *of any deceased person*, or the tomb where the body of any deceased person has been deposited."

The reason is well stated in 21 A. L. R. 2d 476, as follows:

"The normal treatment of a corpse, once it is decently buried, is to let it lie. This idea is so deeply woven into our legal and cultural fabric that it is commonplace to hear it spoken of as a "right" of the dead and a charge on the quick. Neither the ecclesiastical, common, nor civil system of jurisprudence permits exhumation for less than what are considered weighty, and sometimes compelling, reasons. Securing "unbroken final repose" has been the object of both civil and criminal legislation."

The gist of the violation here charged is violation of the *grave* and not the body. Thus, the decision of the Ohio Supreme Court in *Carter* v. *Zanesville,* 59 Ohio St. 170, where the gist of the civil action under R. S. 3764 was the possession of a "body," is not inconsistent with the view here adopted.

Assuming, without conceding its correctness, the view

of the majority that a "body" must be in the opened grave for a violation to occur, the record is such that the trier of fact could fairly and reasonably conclude that bodies were moved. The funeral director testified that he was hired to remove the "remains" from the graves and then stated that he removed four "bodies." The exact date these persons were buried is not discernible from the record. The paucity of the record as to the state of the bodies results from the fact that no attempt was made to defend in the trial court or here upon the basis that the bodies were decomposed. I am not persuaded that this court may, with propriety, assume the bodies to have been completely decomposed because of embalming practices, type of caskets and burial equipment with respect to such deceased persons, when the record is silent in such matters.

Under the facts of this case, there could be no question that defendant acted wilfully. It is also an element of the offense that the opening of the grave be unlawful. R. C. 517.21 regulates the removal of bodies from abandoned cemeteries by township trustees and R. C. 517.23 regulates the removal by township trustees upon application of the next of kin. The record reflects that defendant knew of such statutes and knew further that the township trustees refused to act upon her request to move the bodies. She had secured a permit from the health department as contemplated by R. C. 517.23. She could not herself apply under R. C. 517.23 to remove the bodies as she was not a next of kin. Even had such next of kin made application, removal would still be unlawful without action by the trustees.

I have considered the errors assigned and do not believe them well taken. The case was fairly tried, in my view, and the record supports the finding of guilt, and, therefore, I would affirm the judgment below.