**STATE of Texas, Appellant,**

v.

**W. Raymond PACE, et al., Appellees.**

**No. 09 81 019 CV.**

Court of Appeals of Texas,
Beaumont.

Oct. 7, 1982.

Rehearing Denied Oct. 28, 1982.

Jon Burmeister, Provost, Umphrey, Doyle & McPherson, Port Arthur, for appellant.

Roxanne Caperton, Asst. Atty. Gen., Austin, for appellees.

DIES, Chief Justice.

In *Manchac v. Pace,* 608 S.W.2d 314 (Tex. Civ.App.—Beaumont 1980, writ ref'd n.r.e.), this court affirmed a judgment for appellees, plaintiffs below, against defendant, a realtor, for unconscionable conduct under the Texas Deceptive Trade Practices—Consumer Protection Act (effective May 21, 1973), *Sec. 17.41, et seq., Tex.Bus. & Comm. Code Ann.* (1973) (hereafter "DTPA"), holding that appellees were "consumers" under the Act. Appellee Pace was given damages by the jury of $6,000; appellee Reed, $2,000; appellee Carr, $5,000. Judgment was given by the trial court against Manchac trebling the damages. This judgment became final (when the Texas Supreme Court refused to grant a writ of error) on April 22, 1981 (No. B–9983).

In July 1981, a hearing was had to determine whether or not it was appropriate for the damages thus awarded be paid from the Real Estate Recovery Fund (hereafter "Fund"), *Tex.Rev.Civ.Stat.Ann., Art. 6573a.*

The court found that the applicable statutory limit per transaction should be $10,000, and that each of the judgments recovered by the appellees (as plaintiffs below) should be paid either in full (which of course con-

tained treble damages), or at the statutory maximum, whichever is smaller. Such ruling, therefore, decreed that W. Raymond Pace be awarded $10,000, that J. Michael Reed be awarded $6,000, and that Bruce Carr, Jr., be awarded $10,000. It is from this ruling that the State of Texas, through the Texas Real Estate Commission, has perfected this appeal.

■ We first address the limitation question. The Real Estate Licensing Act (hereafter "RELA"), which created the Fund (*Sec. 8*), was effective May 19, 1975. The maximum recovery at that time was $10,000. Effective September 1, 1979, this maximum was raised to $20,000. The acts complained of by plaintiffs in the trial below occurred in October and November of 1975. They argue herein that since their judgment did not become final until April 1981, the $20,000 maximum would apply, and not the $10,000. We disagree.

Their (plaintiffs below, appellees herein) reliance on *Fritsch v. Texas Real Estate Commission,* 587 S.W.2d 209 (Tex.Civ.App.—Beaumont 1979, no writ), is misplaced. The question in *Fritsch,* supra, was whether appellees were entitled to be reimbursed from the Fund for sums expended prior to the effective date of the original enactment of RELA (i.e., May 19, 1975), a question not now in issue. In *Texas Real Estate Commission v. Hood,* 617 S.W.2d 838 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.), the court held that where an unsatisfied judgment against a duly licensed real estate broker supporting a claim against the Fund was founded upon acts which occurred before the effective date of the amendment to RELA (September 1, 1979), which raised the maximum from $10,000 to $20,000, total payment from the Fund to which the judgment creditors were entitled was limited to $10,000. The court, quoting RELA, § 8, *Part 3(b),* reasoned that the amendment which "*permits recovery* by an aggrieved person 'on the grounds described in Part 1(a) [i.e., misrepresentations, etc.] of this

section that occurred *on or after the effective date* of this act' " [i.e., the effective date of the amendment to *Art. 6573a, § 8, Part 3(b)* and *Part 8(c)* is September 1, 1979], mandated that the Hood's claim be bound by the $10,000 maximum, because the basis of their claim (i.e., misrepresentations) occurred *before* the effective date of the amendment (in August, 1978). (emphasis added) As in *Hood,* supra, we hold that the "grounds" (i.e., misrepresentations, etc.), and not the final judgment as appellees argued, must have occurred "on or after the effective date of this Act"; here they did not, so the maximum amount is $10,000 for each plaintiff.

We now take up the remaining question to be answered in this appeal. Are treble damages awarded under the DTPA recoverable against the Fund? We hold that they are not. This question has apparently never before been addressed by a Texas appellate court.* However, the following logic seems compelling.

*Section 8* of the RELA (*Art. 6573a*) governs recovery from the Fund to awards "for 'reimbursing' aggrieved persons who suffer monetary damages by reason of certain acts committed by a duly licensed real estate broker or salesman. . . . "

■ *Black's Law Dictionary* defines "reimburse" as "to pay back, to make restoration, to repay *that expended.*" *Black's Law Dictionary* 1157 (5th ed. 1979). Among the terms listed in *Burton's Legal Thesaurus* as synonyms of the verb "to reimburse" are "refund," "repay," and "restore." *Burton, Legal Thesaurus* 437 (1st ed. 1981). Neither of these linguistic authorities indicate that the verb "to reimburse" contemplates treble damage awards. The purpose of RELA is "to guarantee the fidelity and honesty of the real estate salesman in his dealings with the public and to insure and indemnify any member of the public against damages or injury caused by a violation of the Act." *Texas Real Estate Com-*

---

* It does not appear that the State raised the applicability of the Deceptive Trade Practices Act trebling of the damages in *State v. Wells,* 630 S.W.2d 815 (Tex.App.—Houston [1st Dist.] 1982, no writ history).

*mission v. Century 21,* 598 S.W.2d 920, 923 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r. e.). RELA's purpose, as stated in *Texas Real Estate Commission v. Century 21,* supra, would be frustrated by the payment of anything other than actual damages from the Fund.

■ The case of *Wagner v. Hall,* 519 S.W.2d 488 (Tex.Civ.App.—El Paso 1975, no writ), is persuasive. There the court held that actual damages but not punitive damages were recoverable as awards against a broker for the misconduct of its agent, reasoning that the broker did not authorize, approve, or ratify the agent's deeds. While the treble damages authorized at the time involved in the case at bar (DTPA) cannot strictly be termed "punitive damages," nevertheless their purpose as punishment to the wrongdoer is similar. And why should the Fund be responsible for Manchac's wrongdoing when no member of the Commission had any complicity therewith? We sustain appellant's sole point of error and herewith enter judgment that appellee Pace shall recover of and from the appellant the sum of $6,000; that appellee Reed shall recover of and from the appellant $2,000; that appellee Carr shall recover from appellant $5,000; that appellees shall likewise pay all costs incurred in these proceedings.

REVERSED and RENDERED.