PACIFIC INDEMNITY COMPANY,
et al., Appellants,

v.

THOMPSON–YAEGER, INC.,
Respondent,

Frerichs Our Own Hardware,
Inc., Appellant,

Tjernlund Manufacturing Company,
Defendant,

Yale Engineering, Inc., Respondent (and Thirteen other cases).

No. 47087.

Supreme Court of Minnesota.

Sept. 16, 1977.

O'Brien, Ehrick, Wolf, Deaner & Downing, Thomas E. Wolf and Steven S. Fuller, Rochester, for Pacific Ind.

Robins, Davis & Lyons, Robert M. Wattson and Judy A. Rogosheske, Minneapolis, and David T. Bishop, Rochester, for Frerichs Our Own Hardware.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, William D. Flaskamp and James F. Roegge, Minneapolis, for Fireman's Fund American Ins. Co.

William C. Schacht, Rochester, for appellant Draper & Kramer, Inc.

R. W. Towey, Rochester, for Ins. Co. of N. Am., et al.

Robert F. DeVinny, Rochester, for Weischselbaum & Assoc., Inc.

George F. Restovich, Rochester, for appellant Hoglund.

Clarence E. Hagglund and Robert M. Pearson, Minneapolis, for Thompson-Yaeger.

Brown, Bins & Klampe and Frederic N. Brown, Rochester, for Yale Eng., Inc.

Van Eps & Gilmore, Wayne D. Tritbough and Duane E. Arndt, Minneapolis, for Tjernlund Mfg. Co.

Heard before SHERAN, C. J., and PETERSON and TODD, JJ., and considered and decided by the court en banc.

TODD, Justice.

This action was commenced by tenants or the insurers of tenants of a shopping center in Rochester, Minnesota, which was partially destroyed by a fire.[1] The issues of damages and liability were bifurcated for purposes of trial. This appeal concerns the damage portion of the litigation. A referee was appointed by the trial court to consider the issue of damages in each individual case. The trial court ultimately entered separate orders adopting the referee's report in each individual case and setting interest on the damage awards from the date of the orders. The parties raise issues relating to when interest should commence on the damage awards and the propriety of a pro tanto reduction of plaintiffs' damages. Affirmed in part; reversed in part.

Various tenants and insurers commenced 13 individual actions against 4 defendants: Yale Engineering, Inc., Thompson-Yaeger, Inc., Tjernlund Manufacturing Company, and Frerichs Our Own Hardware, Inc., to recover damages for the destruction of their premises by the 1971 fire in the Miracle Mile Shopping Center in Rochester. The actions were ultimately consolidated and the issues of liability and damages bifurcated for trial purposes.

After an agreement between the parties and an order of the trial court, the Honorable Milton D. Mason, judge of the district court (retired), was appointed to serve as a referee in the damage cases (see, Rule 53.02, Rules of Civil Procedure) without a jury and to render a report in each case pursuant to Rule 53.05(2), Rules of Civil Procedure. Judge Mason heard each of the indi-

1. For a more thorough enumeration of the facts in this case, see, *Pacific Indem. Co. v. Thompson-Yaeger, Inc.*, Minn. (1977), filed herewith.

vidual cases on the issue of damages and rendered a report upon the completion of each hearing. The findings and conclusions included in the referee's reports were reviewed by the trial court following the conclusion of all the damage hearings. On May 12, 1976, the trial court entered separate orders adopting the referee's report in each case. In each order, the trial court set interest on the damage awards at the legal rate from May 12, 1976.

Thereafter, plaintiffs moved the trial court for amended findings of fact and conclusions of law, asking the court to compute interest on the damage awards from the date of the referee's report in each individual case. Defendants Yale Engineering and Thompson-Yaeger also filed a motion for amended findings of fact and conclusions of law requesting the trial court for a pro tanto reduction of the damage award by $240,000. Both motions were denied by the trial court and this appeal resulted.

The following issues are raised by the parties:

(1) Whether interest upon a referee's award of damages pursuant to Rule 53.05(2) is to be computed from the date of the referee's report or the trial court's adoption thereof.

(2) Whether payments made by two codefendants to plaintiffs pursuant to a type of "loan-receipt agreement" should operate as a pro tanto reduction of the total damage award to plaintiffs.

1. The primary issue for determination in this case is at what time does interest begin to accrue upon an award of damages by a referee pursuant to Rule 53.05, Rules of Civil Procedure. Plaintiffs contend that interest should begin accruing from the date of the referee's report. Defendant Yale urges that interest is to be computed from the time of the court's adoption of the referee's report.

Interest is provided for by Minn.St. 549.09, which reads:

"When the judgment is for the recovery of money, including a judgment for the recovery of taxes, interest from the time of the verdict or *report* until judgment is finally entered shall be computed by the clerk and added thereto." (Italics supplied.)

The issue presented is one of first impression for this court. However, this court has previously considered the exact meaning of § 549.09 in other contexts. Recently, in *Bastianson v. Forschen*, 294 Minn. 406, 202 N.W.2d 667 (1972), we held that interest is to be computed from the date a special verdict is rendered rather than from the date of the entry of judgment.[2] It is also the rule in Minnesota that in cases where a general verdict is returned, interest on a money award accrues from the time of the rendition of the verdict. *McCormack v. Hankscraft Co. Inc.*, 281 Minn. 571, 161 N.W.2d 523 (1968).

Thus, given the interpretations of § 549.09 in our past decisions under similar circumstances, we believe the better-reasoned approach in this case is to look to the plain language appearing in § 549.09 which clearly provides for the computation of interest from the time a report is entered in the action. In the present case, the referee was appointed pursuant to Rule 53.02, Rules of Civil Procedure. Rule 53.05(1) requires that a referee appointed by the court prepare a *report* upon the matters submitted to him for consideration (i. e., damages). Thus, it is rather obvious that the referee's report prepared in the present case is includible within § 549.09 which provides for the computation of interest from the date of the report.

Respondents argue that since under Rule 53.05(2) a court can modify, accept, or reject a referee's report in whole or in part, there

---

**2.** Many aspects of a referee's report are similar to that of a special verdict. A referee's findings included in the report cannot be overruled by the court unless clearly erroneous. Rule 53.05(2), Rules of Civil Procedure. A trial court also has the power to set aside and

change an answer to a question in a special verdict when not supported by the evidence. See, *Evanson v. Jerowski*, Minn., 241 N.W.2d 636 (1976); *Orwick v. Belshan*, 304 Minn. 338, 231 N.W.2d 90 (1975). Nevertheless, interest accrues from the date of a special verdict.

is no way of knowing the ultimate amount of damages upon which to calculate the interest due. A similar argument was presented in *Bastianson v. Forschen, supra,* concerning Rule 49.01 and the allowability of interest from the date of a special verdict. In rejecting the argument based on Rule 49.01, we stated (294 Minn. 406, 408, 202 N.W.2d 667, 668):

" * * * The answer, however, is governed not by Rule 49.01 but by § 549.09, which has not been superseded or in any way affected by our Rules of Civil Procedure * * *."

The same rationale is applicable to the decision in the present matter. Thus, we hold, contrary to the decision reached by the trial court, that interest upon a referee's award of damages is to be computed from the date of the referee's report.

■ 2. Defendant Yale Engineering urges that the payment made by codefendants Tjernlund and Frerichs to plaintiffs pursuant to a type of loan-receipt agreement [3] should operate as a pro tanto reduction of the total damage award. The agreement provided that Tjernlund's liability would be limited to $100,000 and Frerichs' to $140,000. These sums of money were then paid to plaintiffs, the claims against Tjernlund and Frerichs were dismissed, the two defendants dismissed their mutual cross-claims, but the cross-claims that Tjernlund and Frerichs filed against the other two remaining defendants (Yale and Thompson-Yaeger) were maintained. The agreement further stated that if the jury returned a verdict by which Tjernlund or Frerichs had no liability, then the entire sums paid to plaintiffs would be repaid. Upon a finding of liability against either Tjernlund or Frerichs (or both), plaintiffs would retain the amount of money necessary to satisfy the jury verdict with the remainder to be repaid. However, in no event, regardless of the verdict, would Tjernlund or Frerichs be liable in an amount greater than their original payment to plaintiffs.

Given the reasoning of this court in the liability portion of this case and our ultimate decision upholding the validity of this particular agreement, a pro tanto reduction of plaintiffs' damage award in the amount of the payments made by Tjernlund and Frerichs would be improper. To allow a pro tanto reduction of the damage award in an amount equal to the payments made to plaintiffs pursuant to the agreement would totally ignore the fundamental nature of the transaction. The payments made to plaintiffs were not in the nature of damage payments made to settle a claim, but were "loans" which, under certain circumstances, plaintiffs must repay. In the present case, Tjernlund was determined not negligent by the jury and thus plaintiffs must return their entire $100,000 loan. Frerichs was determined to be 10-percent negligent. Due to this finding, plaintiffs are allowed to retain a portion of the $140,000 payment as damages while returning the remaining sum to Frerichs. Thus, plaintiffs must return a substantial portion of the money advanced by Tjernlund and Frerichs.

A pro tanto reduction would be appropriate if the payments by Frerichs and Tjernlund were in the nature of a traditional release and settlement agreement, in which case plaintiffs would retain the entire $240,-000. Cf. *Gronquist v. Olson,* 242 Minn. 119, 64 N.W.2d 159 (1954). However, to allow a pro tanto reduction under the present circumstances would be inequitable to plaintiffs since it would reduce their award by the amount which they must repay to Tjernlund and Frerichs. It also would allow the two defendants not parties to the loan-receipt agreement (Yale and Thompson-Yaeger) to profit from the agreement by reducing the amount of their individual liability at the expense of the parties to the agreement. Thus, we hold that a pro tanto reduction in the present case would be improper and therefore affirm that portion of the trial court decision.

**3.** For a detailed discussion concerning the facts surrounding the agreement between plaintiffs and defendants Tjernlund and Frerichs, as well as the validity of this agreement, see, *Pacific Indem. Co. v. Thompson-Yaeger, Inc. supra.*

The decision of the trial court denying plaintiffs interest on their damage award from the date of the referee's report in each individual case is reversed. The denial of a pro tanto reduction of plaintiffs' damage award in an amount equal to payments made by two codefendants to plaintiffs pursuant to a type of loan-receipt agreement is affirmed.

Affirmed in part; reversed in part.

ROGOSHESKE and MacLAUGHLIN, JJ., took no part in the consideration or decision of this case.