## ALLENTOWN PLAZA ASSOCIATES ET AL. *v.* SUBURBAN PROPANE GAS CORPORATION ET AL.

[No. 1274, September Term, 1978.]

*Decided September 10, 1979.*

The cause was argued before GILBERT, C. J., and MORTON and MOORE, JJ.

*Jerome P. Friedlander, II* and *David S. Bruce,* with whom were *Friedlander, Friedlander & Brooks, P.C.* and *Lancaster, Bland, Eisele & Herring* on the brief, for appellants.

*L. Palmer Foret,* with whom were *Carr, Jordan, Coyne & Savits* on the brief, for appellee Suburban Propane Gas Corporation. *Martin L. Goozman,* with whom were *Frank J. Ragione* and *Silber, Wilson & Goozman* and *Interdonato & Ragione* on the brief, for appellee Joseph J. Palmer, Jr. Submitted on brief by *Peter E. Derry* and *McChesney & Pyne, Chartered* for appellee K-Lo Plumbing, Inc. Submitted on brief by *Robert B. Myers* for other appellees.

MOORE, J., delivered the opinion of the Court.

In the proceedings below, the Circuit Court for Prince George's County (Levin, J.) granted summary judgment motions filed by the defendants, four in number, based upon the general three-year statute of limitations contained in Md. [Cts. & Jud. Proc.] Code Ann. § 5-101 (1974).[1] The court rejected the contentions of the plaintiffs, appellants here, that their causes of action in assumpsit and tort, arising out of the construction of a shopping mall, were saved by the provisions of sections 5-108 of the same Article,[2] under which no claim

---

1. Section 5-101 provides:

"A civil action at law shall be filed *within three years from the date it accrues* unless another provision of the Code provides a different period of time within which an action shall be commenced." (Emphasis added.)

2. Although framed as a statute of limitations, § 5-108 has been classified in the Revisor's Note as a grant of immunity to builders, contractors, realtors, and landlords after 20 years from the date the improvement is completed. It provides in part:

"(a) *Injury resulting from improvement to realty.* — Except as provided by this section, no cause of action for damages accrues and

for damages accrues "from the defective and unsafe condition of an improvement to real property" occurring more than 20 years after the completion of the improvement. We shall affirm.

## I

The appellant, Allentown Plaza Associates, is a Maryland limited partnership, which entered into a prime construction contract in March 1972 with appellant, Rand Industries, Inc., as general contractor, for the construction of a shopping center, known as Allentown Mall, located in Camp Springs, Prince George's County, Maryland. Rand later became a partner in Allentown Plaza Associates.

Because of the unavailability of natural gas from the Washington Gas Light Company, appellants installed an underground pipeline system to provide liquid propane gas for its tenants. In March 1972, Allentown Plaza entered into a contract with the appellee, Suburban Propane Gas Corporation (Suburban), to supply the propane, to provide a propane gas storage tank, and to install 23 meters for measuring and controlling pressures for the base usage on each rental unit in the Mall. These meters were to be temporary and were to be removed when natural gas became available. The first paragraph of the contract provided in part:

> *"All Suburban's equipment shall remain personalty, regardless of how attached to the realty,*

---

a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

\* \* \*

(c) *When action accrues.* — A cause of action for an injury described in this section accrues when the injury or damage occurs."

*and shall remain the sole property of Suburban, and
Suburban shall have access thereto at all times for
purposes of removal, repair, alteration, replacement
and service, including the equipment of the
individual tenants, except as otherwise provided for
in this agreement . . . .* (Emphasis added.)

Pursuant to the contract, Suburban supplied the gas meters
to the site but, for reasons not disclosed in the record, did not
install them. Appellants were aware on November 30, 1972
of this breach of the propane contract, but took no legal action
at that time. Rather, they employed two plumbing
contractors, the appellees, Joseph J. Palmer, Jr. and K-Lo
Plumbing, Inc., to make the installations. By October 1973,
all the meters had been installed. Service to the stores with
liquid propane gas commenced. A gas leak was discovered in
the underground pipeline system in February 1975, and some
corrective action was taken by the appellants. In September
1975, however, addditional leaks were detected and the entire
underground system was abandoned and replaced by
pipelines above ground. Replacement costs were
approximately $30,500.

On January 1, 1977, over 3 years after the last meter and
coupling had been installed, appellants filed a declaration
against the aforementioned appellees and against the firm of
Freidin and Arey Associates, the mechanical and electrical
engineers for the project. They alleged that the leaks were
caused by corrosion of the pipes and that the corrosion was
due to appellees' failure to install insulating fittings, known
in the trade as "dielectric couplings," where the gas lines
connected to the gas meters.[3]

More specifically, the claim against Suburban was in
assumpsit for failure to install the meters as required under
the agreement, and in tort for failing to provide dielectric

---

3. We are told that a dielectric coupling would have afforded protection
to the underground pipeline and that such a coupling differs from the metal
couplings actually used only in that it has a plastic-like sleeve which prevents
the passage of current between the meter and the underground pipeline; and
that the cost differential between the metal and dielectric couplings was
about §1.00 each.

couplings with the meters and to warn the appellants of the need for such couplings. The plumbing contractors who made the installations were alleged to be negligent in failing to use and to install dielectric couplings. The cause of action against Freidin and Arey was based upon negligence in failing to provide specifications or warnings concerning the need for such couplings or insulating fittings and otherwise failing to protect the pipes from corrosion.

Following discovery, each of the appellees, filed a motion for summary judgment on various grounds, including, in each instance, a claim that the declaration was barred by the three-year statute of limitations governing civil actions. Md. [Cts. & Jud. Proc.] Code Ann. § 5-101 (1974).[4] In a concise memorandum opinion and accompanying order, the motions were granted.

With respect to the count in assumpsit against Suburban, the court found that a breach of the Allentown-Suburban contract occurred prior to January 1, 1974, "a time computed most favorably for Allentown." Because the declaration was not filed until January 11, 1977, more than three years had elapsed and the assumpsit claim was barred by section 5-101. The court rejected the contention that the statute did not commence to run until February 1975 when the defects in the pipe system were discovered, instead holding that the three-year period began to run from the date of the breach of the agreement and not from the time the breach was discovered. *Mayor & Council of Federalsburg v. Allied Contractors, Inc.,* 275 Md. 151, 338 A.2d 275, *cert. denied,* 423 U.S. 1017 (1975). *See also Leonhart v. Atkinson,* 265 Md. 219, 289 A.2d 1 (1972). With respect to the negligence counts, the court also found that section 5-101 was applicable, again rejecting a contention by the appellants that the period of limitations should begin to run from the date the wrong was discovered (February, 1975) and not the date when it occurred (December, 1973).[5] *Watson v. Dorsey,* 265 Md. 509, 290 A.2d

---

4. *See* note 1, *supra.*

5. The court recognized that the discovery rule is applicable, however, where professional malpractice is concerned. *See* Harig v. Johns-Manville Products, 284 Md. 70, 394 A.2d 299 (1978) (applies to discovery of latent disease); Watson v. Dorsey, 265 Md. 509, 290 A.2d 530 (1972) (attorney); Leonhart v. Atkinson, 265 Md. 219, 289 A.2d 1 (1972) (accountant); Feldman

530 (1972). With respect to appellants' reliance upon section 5-108,[6] the court held as follows:

> "We do not believe that the gas pipe and meter system involved in this instance is an 'improvement to real property' within the meaning of § 5-108. The law in this state regarding what constitutes an improvement for purposes of § 5-108 treatment is very unclear. As a matter of fact, we have been unable to find any recorded case on this subject. However, *Bankers' & Merchants' Credit Company v. Harlem Park Building & Loan Association,* 160 Md. 230 (1930) points to a distinction between a fixture and an improvement to realty. This Court is of the opinion that the entire underground pipe and meter system was a fixture attaching to an improvement, the improvement being the above ground structure known as Allentown Mall Shopping Center."

## II

Appellants' sole contention on this appeal is that the court erred in its failure to apply section 5-108. Succinctly stated, appellants contend that section 5-108 changes established law as to when an action, involving an improvement to real property, accrues. Appellants concede that, prior to the adoption of the section, the applicable time for accrual was when the wrong occurred. *Watson v. Dorsey,* 265 Md. 509. They argue, however, that the enactment of section 5-108 (c) — which provides that a cause of action under the section "accrues when the injury or damage occurs" — changed prior law. In accordance with the change, they claim, the normal three-year statute of limitations begins to run when damage or injury caused by a defective and unsafe condition of an

---

v. Granger, 255 Md. 288, 257 A.2d 421 (1969) (accountant); Mattingly v. Hopkins, 254 Md. 88, 253 A.2d 904 (1969) (civil engineer); Jones v. Sugar, 18 Md. App. 99, 305 A.2d 219 (1973) (physicians). For a recent case concerning the time of accrual of a cause of action for past, present, and prospective damages for permanent nuisance involving ongoing activities, *see* Goldstein v. Potomac Electric Power Co., 285 Md. 673 (1979).

6. *See* note 2, *supra.*

improvement to real estate is *discovered,* except, of course, that after the lapse of 20 years all rights to file an action are lost. Applying section 5-108 to the instant case, it is appellants' position that their damage and injury occurred not when the inadequate couplings were installed but when the underground pipe leaked in 1975. They state: "This was their damage and injury and it occurred [in February 1975] within three years before the Declaration was filed [on January 11, 1977] and before 20 years had passed."

As the Revisor's Note to section 5-108 indicates, the section derived from former Md. Ann. Code art. 57, § 20, *repealed by* 1973 Md. Laws, 1st Spec. Sess., ch. 2, § 2, effective January 1, 1974. The Note goes on to state:

> *"It is believed that this is an attempt to relieve builders, contractors, landlords, and realtors of the risk of latent defects in design, construction, or maintenance of an improvement to realty manifesting themselves more than 20 years after the improvement is put in use. The section is drafted in the form of a statute of limitations, but, in reality, it grants immunity from suit in certain instances.* Literally construed, it would compel a plaintiff injured on the 364th day of the 19th year after completion to file his suit within one day after the injury occurred, a perverse result to say the least, which possibly violates equal protection. Alternatively, the section might allow wrongful death suits to be commenced 18 years after they would be barred by the regular statute of limitations.
>
> *The section if conceived of as a grant of immunity, avoids these anomalies. The normal statute of limitations will apply if an actionable injury occurs."*
> (Emphasis added.)

In our judgment, there is substantial merit to the suggestion in the Revisor's Note, that the section be conceived "as a grant of immunity." At all events, there is a serious question as to whether the section could be applied

retrospectively, as the facts in this case would require.[7] Furthermore, there is a question as to whether, in the event of retrospective application, the language of subsection (c) constitutes an adoption by the Legislature of the "discovery rule" in the absence of specific language to that effect. *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 258 N.W.2d 762 (1977). These and related issues must yield, however, to the *threshold* question whether the instant appeal does involve an "improvement to real property." The court below held it did not; and while, in our judgment, the stated reasons for its conclusion were lacking in clarity,[8] we deem the conclusion itself to be correct. This conclusion obviates the necessity for determination of the other questions of interpretation of section 5-108 strongly urged upon us by appellants.

### III

With respect to the pivotal question of this appeal, it is the appellants' position "the meters and their couplings, especially the couplings, were an improvement to real property" within the meaning of section 5-108. We disagree for two fundamental reasons, either of which is sufficient to support an affirmance of the lower court's determination. First, as the law of this and other jurisdictions discloses, the gas meters and their couplings were not an improvement to real property within established definitions of the term. And second, the contract between Suburban and the appellant specifically provided that the meters were to remain personalty and the sole property of Suburban.

In determining what constitutes an "improvement to real property" courts have employed two basic approaches. One

---

7. Installation of the meters was complete by the end of 1973 but the law was not effective until January 1, 1974. The Court of Appeals, after reviewing a long line of Maryland cases, held in *Slate v. Zitomer,* that an amendment to a statute of limitations provision, as with changes to all substantive law, would not be applied retroactively unless the legislature clearly expressed such an intention. 275 Md. 534, 538-45, 341 A.2d 789, 793-95 (1975), *cert. denied,* 423 U.S. 1076 (1976).

8. As previously disclosed, the trial judge was "of the opinion that the entire underground pipe and meter system was a fixture attaching to an improvement, the improvement being the above ground structure known as Allentown Mall Shopping Center."

applies common law fixture analysis.[9] *Smith v. Allen-Bradley Co.,* 371 F. Supp. 698 (W.D. Va. 1974). The other — most frequently used — avoids "the vagaries of fixture law" and adopts a "commonsense" interpretation of the phrase. *See Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 260 N.W.2d 548 (Minn. 1977). The commonsense approach commences with an examination of the "common usage of language." *Kallas Millwork Corp. v. Square D. Co.,* 225 N.W.2d 454 (Wisc. 1975). It has been stated that an improvement "includes everything that *permanently enhances the value* of premises for general uses."[10] (Emphasis added.) 41 Am.Jur.2d, *Improvements* § 1 (1968). *See also id.* §§ 22, 23. The Washington court in *Seigloch v. Iroquois Mining Co.* defined an improvement as follows:

---

**9.** "[A] fixture is a former chattel which, while retaining its separate physical identity, is so connected with the realty that a disinterested observer would consider it a part thereof." 5 *American Law of Property* § 19.2, at 3-4 (A. J. Casner ed. 1952). "The term implies something having possible existence apart from realty, but which may by annexation be assimilated into realty. Things of a personal nature or buildings or other structures upon the land, which have been so fixed to land as to become a part thereof, are termed 'fixtures', and pass with the land in any transfer of ownership. . . ." 1 *Thompson on Real Property* § 55, at 171 (1964). Once it is determined that personalty has become a fixture, it is usually held that it has become a part of the property to which it is affixed and cannot be removed from it, unless it falls within the trade fixture exception. *Id.* at § 77.

Whether a chattel has become a fixture is a mixed question of law and fact. To make this determination the following factors are examined: the intent of the parties; the character of the chattel; the degree and mode of annexation; the relationship of the chattel to the realty to which it is attached; the relationship of the parties; and any injury to the chattel or freehold upon removal. Anderson v. Perpetual Bldg. & Loan Assoc., 172 Md. 94, 97-101, 190 A. 747, 748-50 (1937); Bankers' & Merchants' Credit Co. v. Harlem Park Bldg. & Loan Assoc., 160 Md. 230, 234-36, 153 A. 64, 66-68 (1931); Dudley & Carpenter v. Hurst, Miller & Co., 67 Md. 44, 47-48, 8 A. 901, 902-04 (1887). *See also* 1 *Thompson on Real Property* §§ 55-62 (1964); Smith v. Allen-Bradley Co., 371 F. Supp. 698 (W.D. Va. 1974); Bankers' & Merchants' Credit Co. v. Harlem Park Bldg. & Loan Assoc., 160 Md. 230; Willcox Boiler Co. v. Messier, 1 N.W.2d 130 (Minn. 1941).

If, after undergoing this analysis, a chattel is deemed to be a fixture, it then becomes, by its very nature, an improvement to the real property to which it is affixed. However, as was recognized in *Pinneo v. Stevens Pass, Inc.,* all improvements to real property are not necessarily fixtures. 545 P.2d 1207, 1209 (Wash. Ct. App. 1976). *Cf.* Yellowstone Pipe Line Co. v. State Board of Equalization, 358 P.2d 55 (Mont. 1960) (for tax assessment purposes, an oil pipeline was a fixture and therefore could not be considered an improvement to real property).

**10.** Black's Law Dictionary (4th ed. 1968) defines an improvement as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." *Id.* at 890.

"The term must mean improvements of the realty; that is to say, such things as are placed thereon by the way of betterments which are of a permanent nature and which add to the value of the property as real property. This would include buildings and structures of every kind, and also such machinery as was placed thereon of a permanent nature and which tended to increase the value of the property for the purposes for which it was used...."

181 P. 51, 53 (Wash. 1919).

In such an analysis, one looks to the nature of the improvement, its relationship to the land and its occupants, and its permanence. For example, in *Pacific Indemnity Co. v. Thompson-Yaeger,* 260 N.W.2d 548, the court held that a furnace which was attached to a building with a complex system of pipes and ducts was an improvement to real property, reversing a lower court determination which applied the law of fixtures to conclude that the furnace was not an improvement. Similarly, the New Jersey court in *Brown v. Jersey Central Power & Light Co.,* 394 A.2d 397 (Super. Ct. App. Div. 1978) held that a transfer switch assembly, a component of a missile system, which was housed in an anchored metal cabinet, located in a cinderblock building, was an improvement to real property. It was án integral part of the system, crucial to its operation.[11]

In the instant case, it is clear that the gas meters and their couplings were not improvements to real property. These

---

**11.** *See also* Rosenberg v. Town of North Bergen, 293 A.2d 662 (N.J. 1972) (road was improvement to real property); Yakima Fruit & Cold Storage Co. v. Central Heating and Plumbing Co., 503 P.2d 108 (Wash. 1972) (refrigeration system of cold storage warehouse was an improvement to real property); Kallas Millwork Corp. v. Square D. Co., 225 N.W.2d 454 (Wisc. 1975) (high pressure water system designed for fire protection was an improvement to real property). *Compare* Ciancio v. Serafini, 574 P.2d 876 (Colo. Ct. App. 1977) (boundary survey not part of building or improvement project is not an improvement to real property); Turner v. Marable-Pirkle, Inc., 233 S.E.2d 773 (Ga. 1977), *appeal dismissed,* 434 U.S. 808 (1978) (improvements to electrical utility pole did not constitute an improvement to real property); Ilich v. John E. Smith Sons Co., Inc., 367 A.2d 1216 (N.J. Super Ct. Law Div. 1976) (rewiring of machine, which, under New Jersey's institutional doctrine, was not a fixture, also was not an improvement to real property within the intendment of the statute).

meters, rented from Suburban by appellants, were meant to be temporary, not permanent. They were to be removed when natural gas became available. Furthermore, Suburban, as owner of the meters, affixed them to the above-ground pipeline for the limited purpose of measuring how much propane each tenant used.[12] It is inconceivable that either appellant or Suburban contemplated making an improvement to real property when the meters were attached. Nor can it be contended that the meters enhanced the value of the property.[13] Their only function was to measure the tenants' usage of propane. They did not pass with the land but were on the property temporarily pursuant to appellants' contract with Suburban.[14]

There remains an additional reason for our conclusion in this case. That is, the contract provision between appellants and Suburban Propane which expressly provided that the gas meters were rented and were to remain personalty and the sole property of Suburban. It has been recognized frequently that contract provisions that a fixture or an improvement are to remain the personal property of the builder or the annexer are valid and controlling.[15] 1 *Thompson on Real Property* § 80 (1964); 41 Am.Jur.2d, *Improvements* § 3 (1968). Consequently, in such situations, the ordinary tests and criteria for determining when an object becomes a fixture are not pertinent. 35 Am.Jur.2d, *Fixtures* § 16 (1967). This freedom of contract to designate chattels to remain personalty, however, "is limited to chattels which are

---

12. *Compare* Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co., 503 P.2d 108 (Wash. 1972) (refrigerator system was an improvement to real property; its purpose was to maintain the warehouse as a cold storage facility).

13. *See* Pinneo v. Stevens Pass, Inc., 545 P.2d 1207 (Wash. Ct. App. 1976) (ski lift added value to the property and was an improvement to real property).

14. *Cf.* Edwards v. S & R Gas Co., 73 So. 2d 590 (La. Ct. App. 1954) (sale of property did not include butane tank rented by former owner; former owner had no title in leased tank and, therefore, could pass none).

15. *Cf.* Pelton Water Wheel Co. v. Oregon Iron & Steel Co., 170 P. 317 (Ore. 1918) (contract could have great weight); Foreman v. Columbia Theater Co., 148 P.2d 951 (Wash. 1944) (agreement between landlord and tenant with respect to ownership of chattels will govern regardless of common law rights). *Compare* Oakland Bank of Savings v. California Pressed Brick Co., 191 P. 524 (Cal. 1920) (agreement between buyer and seller that machine would remain personalty until payments completed was valid unless bona fide purchaser bought beforehand).

attached to the realty in such a manner that they may be detached without being destroyed or materially injured, or without destroying or materially injuring the realty to which they are attached." 1 *Thompson on Real Property* § 80, at 381 (1964). Here, all parties intended that the gas meters would be used only until natural gas was available at which time they would be removed. The meter was attached simply to the pipe above ground. Upon removal, no damage would occur to the meter or the property to which it was attached. The contract between the parties permissibly provided that the gas meter would remain personalty. Since the gas meter was to remain personalty, and the sole property of Suburban, it could not become an improvement to real property. Accordingly, section 5-108 which applies to improvements to real property could not be applicable.

> *Judgments affirmed; costs to be paid by appellants.*