JONES v. OHIO BUILDING CO. ET AL.

(No. 82-0516—Decided August 10, 1982.)

Court of Common Pleas of Lucas County.

*Goldberg, Williams, Jilek & Lafferty Co., L.P.A.,* and *Mr. Michael F. Jilek, Sr.,* for plaintiff Oscar Jones, Jr.

*Messrs. Manahan, Pietrykowski, Bamman & Mohr* and *Mr. H. William Bamman,* for defendant Ohio Bldg. Co.

*Messrs. Fuller & Henry, Mr. John M. Carey* and *Mr. James D. Kurek,* for defendant Schindler Haughton Elevator Corp.

*Messrs. Spengler, Nathanson, Heyman, McCarthy & Durfee, Mr. James R. Jeffery* and *Mr. James P. Triona,* for defendant Kerscher Elevator Co.

RESNICK, J. This cause is currently before the court upon defendant Schindler Haughton's motion for summary judgment. The court has considered the pleadings, memoranda and an affidavit. Upon consideration of the same, the court finds that defendant Schindler Haughton's motion is well taken and is hereby granted.

A brief review of the facts is neces-sitated. Plaintiff alleges in his complaint that on March 7, 1980 he was injured while operating a service elevator in a building owned by defendant, the Ohio Building Company. Plaintiff is seeking compensatory damages from the Ohio Building Company, Schindler Haughton Elevator Company and Kerscher Elevator Company. Various cross-claims have been asserted by the parties.

The sole matter pending before the court is defendant Schindler Haughton's motion for summary judgment. Haughton, the predecessor to Schindler Haughton, installed the elevator in 1954. In its motion, defendant Schindler Haughton has raised as a defense the special statute of limitations contained in R.C. 2305.131. R.C. 2305.131 provides in relevant part:

"*No action to recover damages* for an injury to property, real or personal, or *for bodily injury* or wrongful death, *arising out of the defective and unsafe condition of an improvement to real property,* nor any action for contribution or indemnity for damages sustained as a result of said injury, *shall be brought against any person* performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or furnishing of such services and construction. * * *" (Emphasis added.)

Schindler Haughton maintains that there are only two issues presented in its summary judgment motion: whether an elevator constitutes an "improvement to real property" within the meaning of R.C. 2305.131 and whether plaintiff's action was commenced more than ten years after Schindler Haughton designed, constructed, installed, and serviced the service elevator located in the Ohio Building. It submits that both issues can be decided in its favor. In rebuttal, plaintiff challenges, *inter alia,* defendant's assumption that R.C. 2305.131 bars his action.

Ohio is one of numerous states which

has enacted legislation in the nature of a statute of limitations restricting the time during which an action in tort arising out of the "defective and unsafe condition of an improvement to real property" may be brought.[1] The purpose of these so-called architects' and builders' statutes was to limit the potential liability of architects, engineers and others in the construction industry. These statutes differ from the typical statute of limitations by barring actions after a certain date rather than after injury.[2]

The starting point of the court's inquiry herein is whether Schindler Haughton is within the class protected by the statute. Prior to its amendment in 1971, R.C. 2305.131 extended coverage solely to certified or licensed architects and professional engineers. The General Assembly, however, significantly broadened the scope of the Act when it eliminated the foregoing limitations. As of November 18, 1971, coverage was extended to "any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement."[3] R.C. 2305.131. In this respect, R.C. 2305.131 conforms to a model statute endorsed by the American Institute of Architects, the National Society of Professional Engineers and the Associated General Contractors.[4]

It is the opinion of this court that an elevator company that designed, constructed, installed and serviced the service elevator falls within the scope of R.C. 2305.131. The current district manager of Schindler Haughton, George Gula, attested in his affidavit that the service elevator was installed in what is currently the Ohio Building in 1954. It is undisputed that Schindler Haughton designed, constructed, installed and serviced the elevator. Thus, it falls within the protected class.

It must next be determined whether construction of the service elevator constitutes an improvement to real property within the meaning of R.C. 2305.131. Research has failed to unearth any Ohio cases according a judicial construction to this section. (Indeed, R.C. 2305.131 has received little, if any, judicial scrutiny since its enactment in 1963.) Other courts reviewing the issue have employed two basic approaches. One employs a common-law fixture analysis. *Smith* v. *Allen-Bradley Co.* (W.D. Va. 1974), 371 F. Supp. 698. The other rejects "the vagaries of fixture law" and adopts a "common-sense" interpretation of the phrase. See *Pacific Indemn. Co.* v. *Thompson-Yaeger, Inc.* (Minn. 1977), 260 N.W. 2d 548, 554.

Courts that apply the law of fixtures ask only whether the contested item satisfies the definition of a fixture:

---

[1] See R.C. 2305.131. For a review of legislation of this type enacted by thirty jurisdictions between 1963 and 1967, see Comment, Limitation of Action Statutes for Architects and Builders — Blueprints for Non-Action, 18 Cath. L. Rev. 361 (1969) (hereinafter cited as Comment).

[2] One of the most litigated issues in connection with this type of legislative enactment is whether the statute violates a constitutional provision. See Comment, *supra,* at 370; Annotation, 93 A.L.R. 3d 1242, 1247 (1979). No Ohio court to this date has examined the constitutional implications of the Ohio Act, nor has that issue been raised in the case at bar.

[3] R.C. 2305.131, as it is set forth in Page's Ohio Revised Code Annotated, might lead one to conclude otherwise. It is therein entitled "Limitation of actions against architects and engineers, nonapplication of statute." This appellation, however, is not a part of the statute as it was enacted by the General Assembly. That version of R.C. 2305.131 which limited protection to architects and engineers was amended effective November 18, 1971. See Am. S.B. No. 307, 134 Ohio Laws, Part I, 529-530.

[4] For the complete text of the model act, see Comment, *supra,* at 365-366 fn. 31.

"[A] fixture is a former chattel which, while retaining its separate physical identity, is so connected with the realty that a disinterested observer would consider it a part thereof." 5 Casner, American Law of Property, 3-4, Section 19.2 (1952).

The test for determining whether a chattel has become a fixture is whether the chattel has become annexed to some extent to realty, whether it has an appropriate application to the use or purpose to which the realty is devoted, and whether there is an intention on the part of the owner of the chattel to make it a permanent part of the realty. *Merchants & Mechanics Federal Savings & Loan Assn.* v. *Herald* (1964), 120 Ohio App. 115 [28 O.O.2d 302]; see, also, *Zangerle* v. *Republic Steel Corp.* (1945), 144 Ohio St. 529 [30 O.O. 160]. Depending upon the particular facts of the case, courts have held elevators to be chattels and fixtures. *Medical Tower Corp.* v. *Otis Elevator Co.* (C.A. 3, 1939), 104 F. 2d 133 (fixture); see, also, 35 American Jurisprudence 2d 784, Fixtures, Section 109.

Although the elevator in the instant case might well be a fixture, the court is of the opinion that it need not reach that issue. See, generally, *Silberman & Co.* v. *Acme House Wrecking Co.* (App. 1928), 7 Ohio Law Abs. 471. While analogizing to fixture law is helpful in construing the statutory provision, the term "fixture" and the phrase "improvement to real property" are not synonymous: a fixture, by definition, is an improvement to real property, but an improvement to real property need not be a fixture. *Keeler* v. *Commonwealth* (1981), 56 Pa. Commw. 236, 424 A. 2d 614, 616; see, also, *Cudahy*

*Co.* v. *Ragnar Benson, Inc.* (D. Colo. 1981), 514 F. Supp. 1212.

A more profitable approach to the issue commences with an examination of the "common usage of language." *Kallas Millwork Corp.* v. *Square D. Co.* (1975), 66 Wis. 2d 382, 386, 225 N.W. 2d 454, 456. An improvement is:

"A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intending to enhance its value, beauty or utility or to adapt it for new or further purposes." Black's Law Dictionary 682 (5 Ed. 1979).

An improvement "includes everything that permanently enhances the value of the premises for general uses." 41 American Jurisprudence 2d 479, Improvements, Section 1; see, also, Webster's Third New International Dictionary 1138 (1971).

An examination of the cases yields numerous criteria for determining what constitutes an improvement to real property. Thus, courts have analyzed whether the improvement was meant to be permanent or temporary, *Allentown Plaza Assoc.* v. *Suburban Propane Gas Corp.* (1979), 43 Md. App. 337, 405 A. 2d 326; whether it became an integral component of the system, *Cudahy Co.* v. *Ragnar Benson, Inc., supra,* at 1216; whether it enhanced the value of the property, *Pinneo* v. *Stevens Pass, Inc.* (1976), 14 Wash. App. 848, 545 P. 2d 1207; and whether it enhanced the use of the property, *Washington Natural Gas Co.* v. *Tyee Constr. Co.* (1980), 26 Wash. App. 235, 611 P. 2d 1378. A large number of courts have seen these requirements satisfied.[5]

---

[5] *Cudahy Co.* v. *Ragnar Benson, Inc.* (D. Colo. 1981), 514 F. Supp. 1212 (refrigeration system); *President & Directors of Georgetown College* v. *Madden* (D. Md. 1980), 505 F. Supp. 557 (surface brick); *Pacific Indemn. Co.* v. *Thompson-Yaeger* (Minn. 1977), 260 N.W. 2d 548 (furnace); *Kallas Millwork Corp.* v. *Square D. Co.* (1975), 66 Wis. 2d 382, 225 N.W. 2d 454 (high pressure system); *Rosenberg* v. *Town of North Bergen* (1972), 61 N.J. 190, 293 A. 2d 662 (road); *Yakima Fruit & Cold Storage Co.* v. *Central Heating & Plumbing Co.* (1972), 81 Wash. 2d 528, 503 P. 2d 108 (refrigeration system); *Washington Natural Gas Co.* v. *Tyee*

The court will now review those cases wherein it was held that an elevator constitutes an improvement to real property. In *Mitchell* v. *United Elevator Co.* (1981), 290 Pa. Super. 476, 434 A. 2d 1243, the court reviewed the lower court's determination that the construction of the elevator system in an apartment building was not an improvement to real estate. The lower court apparently viewed the elevator system as a ready-made item that was merely incorporated into the building. The *Mitchell* court disagreed, reasoning that the elevator system was as much an improvement to real property as was insulation material in the ceiling of the warehouse in *Freezer Storage Inc.* v. *Armstrong Cork Co.* (1978), 476 Pa. 270, 382 A. 2d 715. *Mitchell, supra,* at 1249-1250. The court in *Ellerbe* v. *Otis Elevator Co.* (Tex. Civ. App. 1981), 618 S.W. 2d 870, was even more cursory in its determination that an elevator in a multi-storied building constituted an improvement on real property. *Id.* at 872. Finally, in *Carter* v. *Hartenstein* (1970), 248 Ark. 1172, 455 S.W. 2d 918, the court granted the summary judgment motions in a wrongful death action of defendants elevator company, architects and contractor who built an elevator shaft, after determining that the Arkansas architects'

and builders' statute was constitutional. *Id.* at 921.

The court is of the opinion that construction and installation of an elevator constitutes an improvement to real property within the meaning of R.C. 2305.131.[6] The foregoing amply buttresses this conclusion. Related Ohio case law provides additional support. In *Globe Ins. Co.* v. *Wayne* (1907), 75 Ohio St. 451, the court, while analyzing an agreement regarding the installation and use of an elevator, commented upon the improvement of the real estate. *Id.* at 465. Similarly, the court in *Third National Bank & Trust Co.* v. *Reibold* (Mont. Prob. 1948), 51 Ohio Law Abs. 513, stated that it was "undoubtedly true that the elevators constituted an improvement to the building," while ruling upon cost apportionment of the new elevators. *Id.* at 532.

It must finally be determined whether plaintiff's claim is barred by the ten-year statutory time period of R.C. 2305.131. In support of its contention that this question must be answered in its favor, Schindler Haughton submitted the affidavit of George Gula. The service elevator was installed in 1954. Haughton Elevator provided maintenance services with respect to the service elevator pur-

---

*Constr. Co.* (1980), 26 Wash. App. 235, 611 P. 2d 1378 (power lines); *Wayne Twp. Bd. of Edn.* v. *Strand Century, Inc.* (1980), 172 N.J. Super. 296, 411 A. 2d 1161 (dimmer panel); *Commonwealth Land Title Ins. Co.* v. *Topping* (1980), 167 N.J. Super. 392, 400 A. 2d 1208 (land surveys); *Brown* v. *Jersey Central Power & Light Co.* (1978), 163 N.J. Super. 179, 394 A. 2d 397 (missile system component); *Pinneo* v. *Stevens Pass, Inc.* (1976), 14 Wash. App. 848, 545 P. 2d 1207 (ski lift).

Contra *Turner* v. *Marable-Pirkle, Inc.* (1977), 238 Ga. 517, 233 S.E. 2d 773, appeal dismissed (1978), 434 U.S. 808 (electrical utility pole improvements); *Allentown Plaza Assn.* v. *Suburban Propane Gas Corp.* (1979), 43 Md. App. 337, 405 A. 2d 326 (gas meters and their

couplings); *Ciancio* v. *Serafini* (1977), 40 Colo. App. 168, 574 P. 2d 876 (boundary survey); and *Ilich* v. *John E. Smith Sons Co.* (1976), 145 N.J. Super. 415, 367 A. 2d 1216 (rewiring of machine).

[6] Implicit in this finding is the court's belief that the determination of what constitutes an "improvement to real property" is properly before it. Although factual considerations are involved in determining whether an article of property is an improvement to real property, they do not rise to the level of a "genuine issue of material fact" so as to preclude summary judgment under Civ. R. 56. *Keeler* v. *Commonwealth* (1981), 56 Pa. Commw. 236, 424 A. 2d 614, at 616.

suant to maintenance agreements covering the periods from April 19, 1957 through June 1, 1963 and June 1, 1964 through June 1, 1971. Haughton Elevator's last maintenance agreement relating to the service elevator was cancelled effective June 1, 1971. The court has before it the letter of cancellation written by Mr. W. J. Ashenfelter, manager of the building, to Haughton Elevator and the letter of acknowledgement written by Mr. D. M. Russell, sales engineer of Haughton Elevator, to Mr. Ashenfelter acknowledging the cancellation. Thus, it is uncontroverted that neither Schindler Haughton nor Haughton Elevator Company provided any services for or furnished any design, planning, supervision of construction or construction relating to the service elevator since June 1, 1971.

As hereinbefore set forth, plaintiff's injury occurred on March 7, 1980. Plaintiff's action was not filed until March 3, 1982. R.C. 2305.131 provides that "[n]o action * * * for any injury * * * shall be brought against any person * * * *more than ten years after the performance or furnishing of such services and construction.*" (Emphasis added.) The statute clearly establishes that the critical date is *not* the date of injury, but rather the date of completion of services and construction.[7] Thus, it was the intent of the legislature to provide immunity from suit after ten years to the protected class.

Such immunity is properly accorded to Schindler Haughton as plaintiff's claim was brought more than ten years after the company last performed any services for or furnished any design, planning, supervision of construction or construction relating to the service elevator.

Therefore, the court finds, having construed the evidence most strongly in favor of the plaintiff, that there is no genuine issue as to any material fact, that reasonable minds could only reach the conclusion that defendant Schindler Haughton has satisfied the requirements of R.C. 2305.131 and that this defendant is entitled to judgment as a matter of law. Civ. R. 56(C).

Judgment Entry

It is therefore ORDERED, ADJUDGED and DECREED that defendant Schindler Haughton's motion for summary judgment is granted and there being no just reason for delay this cause as against Schindler Haughton is hereby dismissed with prejudice at plaintiff's costs. Civ. R. 54(B).

*Motion for summary judgment granted.*

---

[7] For a discussion of the underlying policies of the limitation statutes for architects and builders, see Comment, *supra,* at 374-379.