**Daniel C. ADAIR, Plaintiff-Appellant,**

v.

**The KOPPERS COMPANY, INC., Defendant-Appellee.**

Nos. 82-3401, 82-3422.

United States Court of Appeals, Sixth Circuit.

Argued March 29, 1984.

Decided Aug. 17, 1984.

Rehearing and Rehearing En Banc Denied Oct. 3, 1984.

---

Thomas Mester, Daniel J. White, Komito, Nurenberg, Plevin, Jacobson, Heller & McCarthy Co., L.P.A., Richard C. Alkire (argued), Cleveland, Ohio, for plaintiff-appellant.

Albert J. Rhoa (Lead Counsel) (argued), W. Andrew Hoffman, III, Rhoa, Follen, Rawlin & Johnson, Cleveland, Ohio, for defendant-appellee.

Before KENNEDY and JONES, Circuit Judges; and CHURCHILL, District Judge.*

CORNELIA G. KENNEDY, Circuit Judge.

In this diversity action, Daniel Adair appeals from a grant of summary judgment holding his suit barred under Ohio Rev.

Code § 2305.131.[1] We have already examined this statute and found it constitutional in *Hartford Fire Insurance Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362 (6th Cir.1984), which was argued before this panel on the same day as the present case. We now hold that the statute applies to the facts of this case and affirm.

Adair is seeking damages for injuries sustained while he was working at a Republic Steel Corporation by-product coke plant in Warren, Ohio. According to Adair, he was injured on February 14, 1980 when his right arm was caught between the head pully and the belt on Conveyor A in the plant's coal handling system. The conveyor, like the entire plant, was designed and built by the defendant The Koppers Company (Koppers) pursuant to a 1923 contract with Trumball-Cliffs Furnace Company. Trumball-Cliffs Furnace Company was later purchased by Adair's employer, Republic Steel Corporation. Koppers constructed eighty ovens to replace sixty-four existing ovens and modified the coal handling system in 1949. It has not performed any services with regard to the conveyor since then.

Adair brought this action against Koppers in December 1981, on grounds of negligence, strict liability, and breach of express and implied warranties. Koppers filed a motion for summary judgment, arguing that Adair's suit was barred by Ohio's statute of repose for designers and builders. The statute states in relevant part:

No action to recover damages … for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, … shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten

* Honorable James P. Churchill, United States Court for the Eastern District of Michigan, sitting by designation.

1. The District Court's opinion granting summary judgment is reported at 541 F.Supp. 1120, 1126 (N.D.Ohio 1982).

years after the performance or furnishing of such services and construction. Ohio Rev.Code § 2305.131. While this motion was pending, Adair moved for leave to amend his complaint to allege willful and wanton misconduct by Koppers. The District Court denied the motion to amend the complaint and granted the motion for summary judgment, dismissing the suit.

If section 2305.131 applies to the facts of this case, it clearly bars Adair's action, since his complaint was filed more than ten years after Koppers last provided services regarding the conveyor. Adair argues, however, that the conveyor is not "an improvement to real property" and thus is not within the scope of the statute. The Ohio Supreme Court has not interpreted "improvement to real property" as used in section 2305.131; we must therefore "make a considered educated guess" how that Court would interpret the phrase if the question were presented to it. *See In re Beverly Hills Fire Litigation,* 695 F.2d 207, 224 (6th Cir.1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983); *Ann Arbor Trust Co. v. North American Co.,* 527 F.2d 526, 527 (6th Cir. 1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2206, 48 L.Ed.2d 818 (1976).

■ Article XII, section 2 of the Ohio Constitution deals with taxes on "[l]and and improvements thereon"; Adair proposes that judicial interpretation of that phrase be applied to "improvement to real property" as used in section 2305.131. Under Adair's analysis, the Ohio law of fixtures would be applied to determine whether something is an improvement, since fixture law is generally applied in construing Article XII, section 2. *See, e.g., Zangerle v. Republic Steel Corp.,* 144 Ohio St. 529, 60 N.E.2d 170 (1945); *Zangerle v. Standard Oil Co.,* 144 Ohio St. 506, 60 N.E.2d 52 (1945); *but see Cullitan v. Standard Oil Co.,* 15 Ohio Ops. 519, 34 N.E.2d 256, 258 (Cuyahoga Cty.Ct.App.) ("Certainly, there can be improvements that might not be strictly fixtures."), *app. dismissed,* 136 Ohio St. 212, 24 N.E.2d 829 (1939). One Ohio court has stated, "As an aid in the

construction of a statute, it is to be assumed or presumed that the legislature was acquainted with, and had in mind, the judicial construction of former statutes on the subject." *State v. Glass,* 27 Ohio App.2d 214, 218, 273 N.E.2d 893 (Brown Cty.1971). Adair argues that the interpretation of the constitutional phrase "[l]and and improvements thereon" should guide the construction of "improvement" as used in section 2305.131 in accord with the usual practice "where words used in a statute have acquired a settled meaning through judicial interpretation and the same terms are used in a subsequent statute upon the same or an analogous subject." *Id.*

Adair fails to demonstrate, however, that section 2305.131 and the constitutional provision refer to "the same or an analogous subject." The constitution speaks of "[l]and and improvements thereon" in the context of establishing preferential tax treatment for certain categories of property to stimulate production. *Zangerle v. Standard Oil Co.,* 144 Ohio St. at 512–13, 60 N.E.2d 52. In contrast, section 2305.131 extends special protection from stale litigation and extensive liability for the designer or builder of "an improvement to real property." *See Hartford Fire Insurance Co.* Given the unrelated purposes of these provisions, there is no reason to assume that the legislature meant to refer to judicial construction of "improvements" in the constitution by using the term "improvement" in section 2305.131. According to Ohio's rules of construction, when no special meanings are indicated for terms employed in a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Ohio Rev.Code § 1.42. Thus "an improvement to real property" should be construed according to its ordinary meaning.

Most courts in other jurisdictions, construing statutes similar to section 2305.-131,[2] have adopted a common sense interpretation of "improvement," rather than employing fixture law. *See Allentown Plaza Associates v. Suburban Propane Gas Corp.,* 43 Md.App. 337, 405 A.2d 326,

---

**2.** At least 44 jurisdictions have enacted statutes with similar language. *See* Knapp & Lee, *Appli-*

331 (1979); *Jones v. Ohio Building Co.*, 4 Ohio Misc.2d 10, 447 N.E.2d 776, 778–79 (C.P. Lucas Cty.1982), and cases cited therein. One trial court in Ohio, after examining these two basic analyses, concluded that the "more profitable approach to the issue commences with an examination of the 'common usage of language'." *Jones*, 447 N.E.2d at 779.

Such an approach ordinarily looks to the definition of "improvements": "[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Kallas Millwork Corp. v. Square D Co.*, 66 Wis.2d 382, 225 N.W.2d 454, 456–57 (1975), quoting *Webster's Third International Dictionary* (1965); *see Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977). In applying the definition of "improvement," courts consider whether a modification adds to the value of the property for the purposes of its intended use, *see Van Den Hul v. Baltic Farmers Elevator Co.*, 716 F.2d 504, 508 (8th Cir.1983); *Mullis v. Southern Co. Services, Inc.*, 250 Ga. 90, 296 S.E.2d 579, 583 (1982), as well as "the nature of the improvement, its relationship to the land and its occupants, and its permanence," *Allentown Plaza Associates*, 405 A.2d at 332.

■ Accordingly, these factors must be applied to the facts of this case to determine whether "an improvement to real property" is involved so that the action is barred by section 2305.131. Adair contends that this question should not have been resolved on a motion for summary judgment since the evidence before the District Court raised genuine issues of material fact. *See* Fed.R.Civ.P. 56(c). We find that no genuine issue of material fact exists, and that summary judgment is appropriate. First, the statement in the affidavit

by Donald J. Smith, Adair's expert witness, that the conveyor is not an improvement to real property does not create an issue of fact. A witness testifies to facts; the court then as a matter of law applies those facts to its construction of the statute. The Wisconsin Supreme Court, interpreting "improvement" in its similar statute of repose, explained:

The interpretation of the meaning and legal significance of words is particularly within the capabilities and function of a court. A jury finding in respect to the instant case would be irrelevant. There are no facts to find. Rather, the question, where the facts are undisputed, is simply whether those facts fit the legislatively prescribed condition. This is a legal question to be resolved on the basis of common usage of language.

*Kallas Millwork Corp.*, 225 N.W.2d at 456. Thus, the conclusion by Adair's witness that the conveyor was not an improvement is irrelevant, since only a court can make that determination as a matter of law.

Adair also finds discrepancies in the facts presented in the record before the District Court. On reviewing the record, however, we find no dispute in the material facts supporting a conclusion that the conveyor is an improvement.

■ In considering the nature of the conveyor, we note that experts for both parties characterized it as an essential component in a larger system. The conveyor on which Adair was injured, Conveyor A, is the first in a line of conveyors used to transport coal from railroad tracks through various processing facilities to the coke ovens.[3] Adair's expert stated that Conveyor A "is an integral part of the related processing equipment;" Koppers expert called it "a permanent and integral part of the coal conveying system of the coke plant." Adair has attempted to limit the focus of this inquiry to Conveyor A, or even to the pulley and belt involved in Adair's accident.

---

cation of Special Statutes of Limitations Concerning Design and Construction, 23 St. Louis U.L.J. 351, 351–52 (1979). For an annotation of cases discussing these statutes and identifying "improvements," see Annot., 93 A.L.R.3d 1242 (1979).

**3.** As the District Court stated, "[E]ach [conveyor] was uniquely planned, designed, engineered and constructed as necessary to effectuate a transportation system." 541 F.Supp. at 1123.

Such components are arguably in the nature of equipment, rather than improvements. Adair's proposed limitation is too narrow, however. While Koppers' suggestion that the entire factory complex be considered as a single unit sweeps too broadly, the nature of the conveyor can best be understood in light of its "integral" role in the coal handling system. In *Mullis*, a brushing cap on an air circuit breaker was held an "improvement" within Georgia's statute of repose as part of a building's electrical distribution system. The Georgia Supreme Court emphasized the system rather than the component:

> The issue is whether a component of a system which is definitely an improvement to real property is an improvement to real property itself. However, to artificially extract each component from an improvement to real property and view it in isolation would be an unrealistic and impractical method of determining what is an improvement to real property. Frequently, as in this case, an improvement to real property is going to consist of a complex system of components.

296 S.E.2d at 584. *See Cudahy Co. v. Ragnar Benson, Inc.*, 514 F.Supp. 1212, 1216 (D.Colo.1981) (header cap and valve improvements where "both are integral components of the refrigeration system which is itself an essential part of the overall structure of the plant"). The coal handling system is analogous to a freight elevator. Instead of raising freight vertically in a cab, it raises coal for the coke ovens on a belt at an eighteen degree angle. Without it or some substitute lifting method the coke plant cannot function. Conveyor A must be analyzed as an integral component in the material handling system.

The coal handling system, which transports raw material to processing facilities, is essential to the operation of the factory as designed and enhances the utility of the property. Smith, Adair's expert witness, stated that Conveyor A "does not add to or detract from the value of the real property," and "can be removed without loss of value to the real property." This statement does not create an issue of material fact. First, Smith is considering only Conveyor A; the relevant unit for this inquiry, however, is the whole material handling system. Second, Smith's statement assumes a legal conclusion that Conveyor A is not part of the real property, which only the court can make. Moreover, Smith is implying that neither the coal handling system nor the total factory complex is real property, since the value of both would obviously be affected if an integral element such as a conveyor was removed. The only reasonable interpretation of Smith's assertion is that, because Conveyor A can be removed without damage to the land, it does not affect the value of the land itself. This observation would be true of many structures, such as buildings, that are unquestionably improvements. The test for an improvement is not whether an addition can be removed without damage to the land, but if it "add[s] to the value of the realty, for the purposes for which it was intended to be used." *Mills*, 296 S.E.2d at 583. The evidence undisputedly shows that the material handling system enhances the utility of the property and adds to its value as used by linking the various facilities.

Smith's assertion that Conveyor A can be removed does not conflict with the District Court's finding that the coal handling system is permanent. The conveyors have remained in place since their construction in the 1920s. According to the specifications and drawings,[4] Conveyor A is bolted in place and supported by steel angles on a concrete footing. A walkway and a handrailing are located on either side of the conveyor belt. Some elevated conveyors are housed in steel sheathing, while Conveyor A is placed below ground level, largely in a tunnel. This degree of physical annexation, combined with the length of time the system has remained intact, despite the sale of the property, supports

---

4. No evidence has been introduced showing specifically that the factory complex was built in compliance with the plans and specifications appended to the 1923 contract. Both the plaintiff and defendant, however, submitted affidavits characterizing the conveyor based on those plans and specifications. Moreover, an inspection report dated March 16, 1982 contains a

Koppers' affidavit stating that "the coal conveyor system, including Conveyor 'A', was a permanent installation."

Thus, there is no question of material fact concerning the nature of the conveyor as an integral component of an essential system, its usefulness to the purpose of the factory, and its permanence. We affirm the holdings of the District Court that Conveyor A is "an improvement to real property" under section 2305.131, and that the statute bars suit against Koppers for designing or building the material handling system.

■ Adair contends that section 2305.-131 does not bar a strict liability action against Koppers for selling a defective product, under Ohio's product liability law. *See Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 364 N.E.2d 267 (1977) (adopting § 402A of the *Restatement (Second) of Torts* ). For the purpose of summary judgment, Koppers has admitted that it designed, manufactured, installed, and sold the coal handling system, including Conveyor A. Section 2305.131 applies to all persons designing or constructing an improvement; Koppers' actions fall squarely within this protection. Adair argues that Koppers "sold" a "product" by building the conveyor system under contract to Trumball-Cliffs Furnace Company. If this semantic distinction were recognized as substantial, however, all builders of improvements would be liable as "sellers" of "products." This would be contrary to the intent behind section 2305.131, which protects designers and builders from all actions arising from defects in an improvement. *See Hartford Fire Insurance Co.* Although Adair cites many cases to support his contention, none deals with the situation before us—an attempt to maintain a product liability action where the defective entity has been held an improvement and where a negligence action has been held barred by the statute of repose for designers and builders.[5] We decline to undercut the pro-

tective purpose of section 2305.131 by excluding a "product liability" action for defects in an improvement from the coverage of the statute.

Adair also argues that section 2305.131 should not be applied to bar this suit because it violates the constitutions of the United States and Ohio. This argument was considered and rejected by this Court in *Hartford Fire Insurance Co.*

Last, Adair argues that the District Court erred in denying him leave to amend his complaint to allege that Koppers' behavior was willful and wanton and to seek additional compensatory and punitive damages. In view of our decision, this contention is moot.

For the reasons stated above, we affirm the judgment of the District Court.

---

detailed description of Conveyor A, consistent with the plans and specifications.

**5.** In one case cited by Adair, the California Court of Appeals implied that if an item were held an improvement, the statute of repose would bar a product liability suit. *Sevilla v. Stearns-Roger, Inc.,* 101 Cal.App.3d 608, 161 Cal. Rptr. 700 (1980).